# In the United States Court of Federal Claims

No. 03-2625C

(Filed: May 11, 2017)

* * * * * * * * * * * * * * * * * * * * * * * *

|  |  |
|---|---|
| ENTERGY GULF STATES, INC., and ENTERGY GULF STATES LOUISIANA, L.L.C., <br><br> Plaintiffs, <br><br> v. <br><br> THE UNITED STATES, <br><br> Defendant. | Spent Nuclear Fuel; Fuel Characterization Costs; Motion for Reconsideration; Rule 59. |

* * * * * * * * * * * * * * * * * * * * * * * *

Alexander D. Tomaszczuk, Pillsbury Winthrop Shaw Pittman LLP, 1650 Tysons Boulevard, McLean, VA 22102, for Plaintiffs. Jay E. Silberg, and Clare Cavaliero Pincoski, Pillsbury Winthrop Shaw Pittman LLP, 1200 17th Street NW, Washington, D.C. 20036, Of Counsel. L. Jager Smith, Jr., Jager Smith, LLC, 1340 Echelon Parkway, Jackson, MS 39213, Of Counsel. Sam O. Morris, IV, Entergy Services, Inc., 1340 Echelon Parkway, Jackson, MS 39213, Of Counsel.

Chad A. Readler, Robert E. Kirschman, Jr., Allison Kidd-Miller, and Eric P. Bruskin, U.S. Department of Justice, Civil Division, Commercial Litigation Branch, P.O. Box 480, Ben Franklin Station, Washington, D.C. 20044, for Defendant. Jane K. Taylor, U.S. Department of Energy, Office of General Counsel, 1000 Independence Avenue, SW, Washington, DC 20585, Of Counsel.

---

**OPINION AND ORDER**

---

**WILLIAMS**, Judge.

This matter comes before the Court on Plaintiffs' motion for reconsideration of the Court's decision denying Plaintiffs' claims for fuel characterization costs. Entergy Gulf States, Inc. v. United States, 129 Fed. Cl. 135, 139 (2016) ("Entergy III"). At issue is the proper interpretation

of System Fuels, Inc. v. United States, 818 F.3d 1302 (Fed. Cir. 2016) ("System Fuels"). Plaintiffs assert that this Court erred in finding that the Federal Circuit's decision in System Fuels was precedent for denying damages for fuel characterization. Defendant argues that System Fuels did preclude an award of fuel characterization costs because the Federal Circuit only awarded cask loading costs, not fuel characterization costs.

Although Defendant is correct that the Federal Circuit in System Fuels only expressly awarded "cask loading costs," an in-depth review of the underlying trial court's decisions in System Fuels, Inc. v. United States, 120 Fed. Cl. 737, 748-50 (2015) ("ANO II"), rev'd and remanded, 818 F.3d at 1307, demonstrates that both the parties, via stipulation, and the trial court, in entering judgment on remand, interpreted System Fuels to require the award of all of the plaintiffs' claimed fuel characterization costs as a component of cask loading costs. While this was not expressly stated in either the parties' stipulation or the trial court's judgment, the quantum of damages awarded on remand and the trial court's findings in its underlying decisions bear this out. As such, this Court grants reconsideration and amends Plaintiffs' judgment to award fuel characterization costs.

## Background

This Court previously entered opinions on April 14, 2016, Entergy Gulf States, Inc. v. United States, 125 Fed. Cl. 678 (2016) ("Entergy I"), September 21, 2016, Entergy Gulf States, Inc. v. United States, 128 Fed. Cl. 335 (2016) ("Entergy II"), and November 18, 2016, Entergy III. The Court awarded Plaintiffs total damages of $47,539,368 for site modifications, payroll and materials loaders, additional security, and cask loading costs at River Bend Nuclear Generating Station ("River Bend"). Entergy II, 128 Fed. Cl. at 336; Entergy I, 125 Fed. Cl. at 718. At issue here is Entergy III, in which this Court determined that Plaintiffs Entergy Gulf States, Inc. and Entergy Gulf States Louisiana, L.L.C. were not entitled to recover $562,020 in claimed fuel characterization costs.[1]

Fuel characterization is "the process of documenting the physical and nuclear characteristics of spent fuel assemblies." Dairyland Power Coop. v. United States, 128 Fed. Cl. 499, 501 n.2 (2016) (internal citation and quotation marks omitted). Fuel characterization tests individual fuel assemblies to determine whether the fuel assembly is damaged or is leaking radioactive materials. Plaintiffs performed fuel characterization because the Holtec cask system's Certificate of Compliance, a Nuclear Regulatory Commission license governing the parameters, design, and configurations for that cask loading system, required Plaintiffs to load only fuel assemblies that were intact and did not pose a risk of leaking. Tr. 108, 150-52.

Fuel sipping is one form of fuel characterization, which is used to test whether a fuel assembly has a defect or breach. Id. at 1623. According to Jerrell Campbell, the senior project manager for dry fuel storage at River Bend, to perform fuel sipping, Plaintiffs installed Westinghouse equipment in the spent fuel pool, placed a spent fuel assembly into a device they call a "can," and ran water through the fuel assembly in the "can." Id. at 151. If there was a crack in the fuel assembly's cladding and gas was emitted, there would be a failure in the fuel assembly. Id. at 1623-24. Plaintiffs performed this fuel characterization process underwater in the spent fuel

---

[1] The parties previously stipulated to the amount of fuel characterization costs. See Joint Stip. ¶ 6j.

pool during the claim period to determine the integrity of fuel assemblies in the spent fuel pool and to ensure that these assemblies were intact, met Holtec's Certificate of Compliance, and were suitable for loading into a Holtec Multi-Purpose Canister. Id. at 151-52, 1624-25; PX 64 at A-1.

The disputed fuel characterization costs were captured in Operations & Maintenance Work Order N09271, entitled "Vacuum Sipping." Tr. 150. Mr. Campbell testified that River Bend would not have performed the work covered by Work Order N09271 if it had not needed additional spent fuel storage space. Id. at 152. In essence, fuel characterization is an early step in the sequence of events that collectively comprise cask loading activities.

## Discussion

A court may grant a motion for reconsideration when "there has been an intervening change in the controlling law, newly discovered evidence, or a need to correct clear factual or legal error or prevent manifest injustice." Young v. United States, 94 Fed. Cl. 671, 674 (2010).

This Court's denial of fuel characterization costs was based on its reading of the Federal Circuit's opinion in System Fuels, where the Federal Circuit awarded "all of the costs of loading . . . storage casks" because storage casks may not be used for transportation. 818 F.3d at 1306. The appellate court stated that the expenses incurred for loading the storage casks were "expenses incurred entirely for storage due to the government's breach," and that because the storage casks cannot be used for transportation, "System Fuels will be required, if and when the government begins to comply . . . , to unload the spent nuclear fuel from these storage casks and reload it into suitable transportation casks provided by the government." Id. at 1307.

In System Fuels, the Federal Circuit did not separately analyze fuel characterization costs.[2] The dispute underlying the motion for reconsideration is whether the Federal Circuit's award of "cask loading costs" encompassed any, some, or all of the claimed fuel characterization costs. This dispute requires this Court to review the trial court's ruling underlying System Fuels, the decision in ANO II. In originally reviewing the ANO II trial court's decision, this Court focused on the distinction between fuel characterization costs attributable to high-burn-up fuel and those attributable to non-high-burn-up fuel, and found:

> [i]n System Fuels, the Federal Circuit affirmed the trial court's award of cask loading costs including fuel characterization costs, but the trial court had only awarded costs for characterizing high-burn-up fuel. System Fuels, Inc. v. United States, 120 Fed. Cl. 737, 748-50 (2015) ("ANO II"), rev'd and remanded, 818 F.3d at 1307. The ANO II trial court was precise in segregating the processes of loading high-burn-up fuel as opposed to non-high-burn-up fuel and found that damages for characterizing non-high-burn-up fuel were not warranted because the process of loading non-high-burn-up fuel into Holtec storage casks was similar to the process of loading that type of fuel into [Department of Energy ("DOE")] transportation casks. Because Plaintiffs did not store high-burn-up fuel during the damages

---

[2]   Indeed the term "fuel characterization costs" does not appear in the Federal Circuit's System Fuels opinion. See Dairyland Power Coop. v. United States, 128 Fed. Cl. 499, 503 n.3 (2016).

3

period, Plaintiffs have not established entitlement to damages for fuel characterization. See ANO II, 120 Fed. Cl. at 748-50.

Entergy III, 129 Fed. Cl. at 136. Upon reconsideration and a more probing examination of the ANO II trial court's opinions pre- and post-remand, this Court finds that it interpreted the parameters of the Federal Circuit's award of cask loading costs in System Fuels differently than the ANO II trial court and the parties on remand.

The ANO II court divided the plaintiffs' claim for characterization and loading costs into three categories: characterization and loading of high-burn-up fuel, the loading of Holtec storage casks and their subsequent storage on ANO's Independent Spent Fuel Storage Installation ("ISFSI"), and the loading of non-high-burn-up spent fuel. ANO II, 120 Fed. Cl. at 751. The ANO II court concluded that the plaintiffs' costs for characterization and loading of the high-burn-up fuel were allowable, because the high-burn-up fuel would have to be re-characterized, but that costs for the non-high-burn-up fuel were not recoverable due to the similarities in loading non-high-burn-up fuel into Holtec casks and DOE transportation casks. Id. at 750-51.

In ANO II, the trial court reduced the award of fuel characterization costs, employing the following computational analysis:

> [p]utting obstruction aside, as the factual record now stands, the court could calculate disallowed characterization and loading damages of mitigation by: (1) starting with the overall amount claimed by System Fuels and disputed by the government ($6,475,497); (2) removing one-third of the costs to account for high-burn-up spent fuel ($2,158,499), leaving $4,316,998; (3) removing one-half of that remaining amount ($2,158,499) to account for the cost of loading canisters containing non-high-burn-up spent fuel into Holtec HI-STORM storage modules and moving those modules to the [ISFSI] at ANO; and (4) removing one-tenth of that remaining amount to account for the fact that DOE-supplied transportation casks would be bolted rather than welded shut ($215,850), leaving $1,942,649 as the amount of imputed, incurred characterization and loading costs that should be disallowed. With those adjustments, ANO's claim for characterization and loading costs would be reduced from $6,475,497 to $4,532,848, and the government would have succeeded in eliminating $1,942,649 from System Fuels' claimed damages.

Id. at 751 (second emphasis added).

When ANO II was remanded by the Federal Circuit after the System Fuels decision, the parties stipulated that the trial court should enter judgment in the amount that it had previously disallowed, $1,942,649, with no deductions for any type of fuel characterization costs. See Joint Status Report and Stip., ANO II, 120 Fed. Cl. 737. The final judgment the trial court entered in ANO II includes the exact amount of the judgment requested by the parties, and states: "[t]he court accepts and adopts the stipulation as a basis for entry of an amended final judgment in this action." See Order for Am. Final J., ANO II, 120 Fed. Cl. 737.

The ANO II trial court had denied fuel characterization costs to the extent that those claims were tied to non-high-burn-up fuel, but the Federal Circuit reversed this disallowance of fuel characterization costs on appeal. On remand, as reflected in the final judgment entered by the

4

ANO II trial court, all fuel characterization costs were allowed. As such, System Fuels is precedent for a full award of fuel characterization costs whether such costs were incurred with respect to high-burn-up fuel or non-high-burn-up fuel.

The Government has lodged three arguments against granting reconsideration. First, the Government posits that because the Federal Circuit's opinion in System Fuels and the post-remand stipulation in ANO II referred only to cask loading costs and did not specifically mention fuel characterization costs, fuel characterization costs were not encompassed in the appellate court's ruling or the parties' stipulation and the trial court's judgment on remand.[3] The procedural history outlined above squarely refutes this argument. The Federal Circuit reversed the disallowance of all fuel characterization costs as they were a component of cask loading costs, and, on remand in ANO II, the trial court awarded the full amount of cask loading costs - - including fuel characterization costs - - that it had disallowed. Although the stipulation in ANO II did not recite the components of the award, it included the exact figure the ANO II court had previously disallowed and encompassed all fuel characterization costs - - both high-burn-up and non-high-burn-up fuel. See ANO II, 120 Fed. Cl. at 751-52. As such, System Fuels is precedent for awarding fuel characterization costs as a component of cask loading costs.

Second, the Government contends that Plaintiffs must establish that the disputed fuel characterization costs would not have been incurred in a plausible non-breach world. In the Government's view, Plaintiffs failed to meet this burden because their expert did not model fuel characterization costs. However, the Federal Circuit in System Fuels held that a plaintiff need not model the non-breach world for loading storage casks. Indeed, the Federal Circuit dismissed the lack of a model comparing costs of loading hypothetical DOE transportation casks to costs of loading Holtec storage casks as "irrelevant." 818 F.3d at 1307 (stating "the costs of loading future transportation casks, or the difference between the costs of loading these storage casks and loading transportation casks, are irrelevant to System Fuels' entitlement to the expenses it incurred for loading these storage casks") (emphasis in original). This analysis by the Federal Circuit in System Fuels governs this case, as the claimed fuel characterization costs here were also incurred for

---

[3] Defendant argues:

> Entergy's primary assertion of legal error resulting in manifest injustice is that this Court erred when it rejected River Bend's fuel characterization claim because the trial court in ANO II supposedly awarded costs for characterizing non-high-burn-up fuel on remand following the System Fuels decision. Pl. Mot. at 4-6. This remand judgment, Entergy argues, demonstrates that the Federal Circuit's decision in System Fuels dictates the recoverability of fuel characterization costs, even for non-high-burn-up fuel. Id. Yet, the Order For Amended Final Judgment in ANO II, attached as Exhibit 1 to Entergy's motion, does not award the utility its fuel characterization costs, but instead discusses only an award of "$1,942,649, which is the portion of cask loading costs that was disputed by the parties at trial[.]" Pl. Mot. Exhibit 1 (emphasis added).

Def.'s Resp. 3-4.

loading Holtec storage casks, precluding this Court from imposing an expert opinion/modeling requirement the appellate court deemed unnecessary.[4]

Third, the Government raises a causation argument, asserting that "the decision in System Fuels does not require the Court to award [Plaintiffs'] fuel characterization costs absent a showing that such costs were caused by DOE's breach of the Standard Contract, would not have been incurred in a plausible non-breach world, and will be incurred again in the future." Def.'s Resp. 3. Plaintiffs have made the requisite causation showing. This Court has previously determined that Plaintiffs would not have had to store their spent fuel on site in dry storage had DOE performed. Entergy I, 125 Fed. Cl. at 717. The Court has also specifically found that, had DOE performed, "Plaintiffs would not have been required to store spent fuel on an ISFSI in Holtec canisters." Id.; see, e.g., System Fuels, 818 F.3d at 1306; Tr. 152, 1102; PX 960 at 13.

Nor is Vermont Yankee precedent for denying fuel characterization costs here. As this Court observed in Entergy III:

> The Federal Circuit's denial of fuel characterization costs in Vermont Yankee was predicated on the plaintiffs' failure to meet their burden of proving that fuel characterization would be required again upon DOE's performance. . . . The Vermont Yankee Court relied upon the plaintiffs' own belief that DOE would accept the earlier characterized fuel without re-characterization. Id. Based on that record, the Vermont Yankee Court concluded that it was "possible that another review of the spent fuel condition [would] be required" if DOE performs. Id. (internal citation and quotation marks omitted). As such, Vermont Yankee's denial of fuel characterization costs, based upon the plaintiffs' arguments and the record in that case, does not mandate a blanket denial of such costs here.

Entergy III, 129 Fed. Cl. at 139.

In this case, there is no evidence suggesting that Plaintiffs believe (unlike the plaintiffs in Vermont Yankee) that DOE would have accepted or will accept the previously performed characterization for loading fuel into DOE transportation casks. Rather, here, as in System Fuels, the utility "will be required, if and when the government begins to comply . . . to unload the spent nuclear fuel from these storage casks and reload it into suitable transportation casks provided by the government." Sys. Fuels, 818 F.3d at 1307. Although Plaintiffs here are not storing high-burn-up fuel, the record demonstrates that fuel characterization will likely need to be redone in reloading transportation casks if and when DOE performs. Plaintiffs here have established, as did the plaintiffs in System Fuels, that DOE will likely not accept the fuel as it is currently stored,

---

[4] In any event, Defendant prevented the construct of such a model here as the Government provided no information in discovery or at trial as to the non-breach world with respect to DOE transportation casks or the Certificate of Compliance that DOE was required to provide for such casks under the Standard Contract. See PX 960 at 7 ("[D]efendant admits that it does not know the requirements of the certificates of compliance . . . ."). The Government also admitted that "a DOE-supplied cask's certificate of compliance may have contained different selection criteria than the Holtec system." Def.'s Post-Trial Br. 36.

requiring Plaintiffs to re-characterize and repackage the fuel prior to performance. The Court finds that the disputed $562,020 in fuel characterization costs were caused by DOE's breach.

## **Conclusion**

Plaintiffs' motion for reconsideration is **GRANTED**.

The Clerk of the Court shall vacate the original judgment and enter an amended judgment granting Plaintiffs additional damages in the amount of $562,020 for Plaintiffs' incurred fuel characterization costs.

                                                      s/Mary Ellen Coster Williams
                                                      **MARY ELLEN COSTER WILLIAMS**
                                                      **Judge**